## Fugate v. Commonwealth.

(Decided Oct. 16, 1934.)

HENRY L. SPENCER and LEEBERN ALLEN for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

The appellant, Sewell Fugate, and his brother, Breck Fugate, were jointly indicted for the murder of Thurman Allen, and on their trial the motion of Breck Fugate for a directed verdict in his favor was sustained, but a similar motion of appellant was overruled and the case as to him was submitted to the jury, which convicted him and fixed his punishment at life imprisonment.

On this appeal it is argued that the evidence is not sufficient to sustain the verdict and that at the most appellant was proven guilty of manslaughter and not murder. This requires a recital of the evidence.

The deceased, Thurman Allen, lived on the South fork of Quicksand creek in Breathitt county, and at about 1 o'clock on the day he was killed, which was June 24, 1933, he left his home with a turn of corn and started up the creek to a mill. After leaving the corn at the mill, he proceeded up the creek and met Tom Tincher, and later, Winfield McDaniel. During the afternoon Allen and McDaniel became intoxicated. In this condition they started to the home of Dan Green Craft,

who lived on the South fork of Quicksand just above the home of Brice Fugate, appellant's father. After they passed the home of Brice Fugate, Allen either fell off of his mule or got off and laid down on the edge of the road. McDaniel and Tincher went on to the home of Craft, where McDaniel became very abusive and boisterous. He pointed his pistol at Craft and Mrs. Craft. After annoying the Crafts for about thirty minutes, he left and went to Brice Fugate's home, where he proceeded to abuse and annoy Brice Fugate, a man nearly seventy years of age. He ordered Fugate to assist him in lifting Allen on his mule. Allen finally got on his mule unassisted and he and McDaniel started down the creek. In the meantime Brice Fugate had sent a small boy, Hoy Hall, his stepson, to notify Breck Fugate and appellant that McDaniel was at his home threatening to kill him. Appellant lived about a half mile down the creek from his father's home and Breck Fugate lived about midway between the homes of Brice Fugate and Sewell Fugate. The boy delivered the message to Breck Fugate and went on to the home of appellant. Appellant's wife, uncle, and one or two other persons were present when the Hall boy informed appellant that McDaniel was abusing and threatening appellant's father. Appellant asked his uncle if he had a pistol, and when his uncle said, "No," he asked his wife for his shotgun shells. She got four shells loaded with buckshot and appellant left with the Hall boy and started up the road. As he passed the home of his brother, Breck Fugate, he got an automatic shotgun and loaded it with the four shells. About sixty yards below his father's home he met McDaniel and Allen riding down the creek. They all stopped, and McDaniel and appellant talked about a minute, but the record fails to disclose what was said. McDaniel and Allen proceeded down the road and appellant went on to his father's home where he was told what hod occurred. Brice Fugate had not been injured. Appellant remained at his father's home about five minutes and he and his brother, Breck Fugate, started in the direction of their homes. Appellant was armed with a shotgun but Breck was unarmed. About three hundred yards below Brice Fugate's home and at a sharp curve in the road, they met McDaniel and Allen returning up the creek. According to appellant and his brother, as soon as McDaniel saw them he drew a pistol and began shooting. Appellant returned the fire, killing

both McDaniel and Allen. Allen fell from his mule about seventy-five feet down the creek from where McDaniel was shot. Allen had seventeen wounds in his chest and fifteen in his back, all produced by buckshot, and a bullet wound in his head. The bullet was fired from a .44 or .45 caliber pistol and entered just above his right eye. The bullet passed through Allen's head and was found in the road near his body. Appellant claimed that he had no pistol, and it is his theory that the bullet which struck Allen was fired by McDaniel. Appellant and his brother both testified that Allen fired a pistol, but several persons who reached the scene immediately after the shooting testified that they searched the dead men and found only one pistol which was lying in the road near the body of McDaniel. There was evidence that Allen owned no pistol and was unarmed on the day of the killing. Immediately after the killing appellant told a number of persons that he had killed both McDaniel and Allen, and that he had killed McDaniel because at the time he shot, McDaniel was drawing his gun, and that he killed Thurman Allen because he "didn't want to take any chances on Thurman." Walter Allen, appellant's cousin who was at appellant's home when the Hall boy came, testified as follows:

"The boy came down there crying and said Winfield McDaniel and Thurman Allen was up there and Winfield was about to kill his daddy, and Sewell said 'Dolph, have you got a pistol?' My daddy says 'I have not.' He then said 'Vicie, where is my shells?' and Vicie said 'in the house.' Had four buckshot and he got them and started and daddy said 'Sewell, you have not got no gun.' Sewell said 'Breck has two.' He went up the road and about ten or eleven minutes we heard the shooting; about 25 minutes we started and met Sewell and Breck and Sewell said 'We killed them people.' They said 'What did you kill them for?' Sewell said 'Winfield started to draw his pistol and I shot him' —said Thurman was doing nothing. 'I was afraid to take any chances on him.'"

In McHargue v. Commonwealth, 231 Ky. 82, 21 S. W. (2d) 115, the accused was convicted of murder, and it was held that under the facts of that case he was at the most guilty only of manslaughter, and that a murder instruction should not have been given. It was pointed out in the opinion that malice aforethought or

premeditated design, an essential ingredient of the crime of willful murder, was wholly absent. As there was no dispute as to the facts, it became a matter of law for the court to adjudge whether or not the facts authorized an inference that the killing had been done with premeditated design.

In the instant case the evidence is conflicting on the question of intention. If appellant's testimony is true, he should have been acquitted on the ground of self-defense; but there is evidence from which a jury might reasonably infer not only that he did not kill Allen in his necessary self-defense, but that the provocation was not sufficient to reduce the crime from willful murder to voluntary manslaughter. Appellant and his brother testified that Allen fired a pistol, but there was convincing evidence that Allen was not armed and was so intoxicated as to be in a helpless condition. He stated in the presence of others immediately after the shooting that Allen was doing nothing and that he "was afraid to take a chance on him." McDaniel, in his intoxicated condition, had been guilty of reprehensible conduct at the homes of Dan Green Craft and Brice Fugate, but he had injured no one. Appellant met McDaniel and Allen a few minutes before the killing and no trouble ensued. It is inferable from the evidence that he became incensed at the recital of the indignities to which his father had been subjected by McDaniel, and that he left his father's home with the intention of killing those he deemed responsible for the trouble. The case was clearly one for the jury, and under the familiar rule of this court that the jury's finding on conflicting evidence is conclusive, we are without authority to interfere with its verdict.

The judgment is affirmed.